IN THE UNITED STATES DISTRICT FOR
THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **FELIX FRAZIER**, <br><br> Plaintiff <br><br> vs. <br><br> **U.S. XPRESS, INC.**, **U.S. XPRESS ENTERPRISES, INC.**, and **KERNEL LLOYD REID**, <br><br> Defendants | NO. 6:19-CV-557 |

## ORIGINAL COMPLAINT

This lawsuit arises out of a motor vehicle wreck on I-35 on September 27, 2017. Plaintiff Felix Frazier brings this complaint against Defendants, and would respectfully show the court the following:

## PARTIES

1.1. Plaintiff Felix Frazier resides in Buda, Texas.

1.2. Defendant Kernel Lloyd Reid resides in Orlando, Florida.

1.3. Defendants, U.S. Xpress Enterprises, Inc. and U.S. Xpress, Inc. (collectively US Xpress), are for-profit Nevada corporations headquartered in Chattanooga, Tennessee.

1.4. US Xpress regularly conducts business using interstate highways located in Texas. US Xpress is a motor carrier who provides motor vehicle transportation for compensation. It is licensed and regulated by the Federal Motor Carrier Safety Administration and its United States Department of Transportation (DOT) number is 303024.

1.5. Kernel Lloyd Reid was an employee of the Defendant US Xpress on September 27, 2017. Mr. Reid acted within the course and scope of his employment for Defendant at all times material to this lawsuit. Specifically, Mr. Reid acted within the course and scope of his employment at all times on September 27, 2017, when he was driving the Freightliner Cascadia 125 with the license plate number G7423HY.

1.6. At all times material to this lawsuit, Defendant U.S. Xpress Enterprises, Inc. owned and operated the tractor and trailer Mr. Reid drove on September 27, 2017. This truck was a commercial motor vehicle that transported property or passengers in interstate commerce. On that day, Mr. Reid reported to the authorities that U.S. Xpress Enterprises, Inc. owned the tractor trailer.

## JURISDICTION

2.1. This Court has subject-matter jurisdiction because of diversity of citizenship between Plaintiff and all Defendants. Further, the amount of controversy in this lawsuit is greater than $75,000. *See* 28 U.S.C. § 1332.

2.2. This case arises out of a wreck between Defendants vehicles and Plaintiff's car that occurred in Waco, Texas; therefore, the Court may exercise personal jurisdiction over Defendants.

2.3. This Court may also exercise personal jurisdiction over US Xpress because it conducts continuous and systematic business in Texas.

2.4. A substantial part of the events or omissions giving rise to this lawsuit occurred in this judicial district. Under 29 U.S.C. § 1391(b)(2), venue is proper in the District Court for the Western District of Texas.

2.5. Defendant U.S. Xpress Enterprises, Inc. may be served through its registered agent, National Registered Agents, Inc., 16055 Space Center Blvd., Ste. 235, Houston, Texas 77062.

2.6. Defendant U.S. Xpress, Inc. may be served through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3136.

2.7. Defendant Kernel Lloyd Reid may be served pursuant to Fed. R. Civ. P. 4(e)(2), by personally delivering the summons and this Complaint to Mr. Reid's residence in Orlando, Florida.

## FACTS

3.1. US Xpress is a licensed motor carrier. To become licensed, US Xpress had to submit an OP-1 Application for Motor Carrier and Broker Authority form. In doing so, Defendant certified that Defendant has access to and is familiar with all applicable U.S. DOT regulations relating to the safe operation of commercial vehicles and the safe transportation of hazardous materials and it will comply with these regulations.

3.2.    US Xpress certified to the Federal Government that it has in place a system and an individual responsible for ensuring overall compliance with Federal Motor Carrier Safety Regulations.

3.3.    US Xpress certified to the Federal Government that it can produce a copy of the Federal Motor Carrier Safety Regulations and the Hazardous Materials Transportation Regulations.

3.4.    US Xpress certified to the Federal Government that it has in place a driver safety training/orientation program.

3.5.    US Xpress certified to the Federal Government that it has prepared and maintains an accident register (49 CFR 390.15).

3.6.    US Xpress certified to the Federal Government that it is familiar with DOT regulations governing driver qualifications and has in place a system for overseeing driver qualification requirements (49 CFR Part 391).

3.7.    US Xpress certified to the Federal Government that it has in place policies and procedures consistent with DOT regulations governing driving and operational safety of motor vehicles, including drivers' hours of service and vehicle inspection, repair, and maintenance.

3.8.    US Xpress certified to the Federal Government that it is familiar with and will have in place a system for complying with U.S. DOT regulations governing alcohol and controlled substances testing requirements (49 CFR 382 and 49 CFR Part 40).

3.9.    Despite the certifications made to the Government, US Xpress and its drivers received thousands of citations for violating the Federal Motor Carrier Safety Regulations and State or Local laws. In fact, in the last two years, US Xpress received at least **2,027 unsafe driving violations**.

    (a)    Of those, at least 432 were violations of state or local law for speeding 6-10 miles per hour over the speed limit;

    (b)    At least 401 were Lane Restriction violations;

    (c)    At least 346 were for Failure to obey traffic control device;

    (d)    At least 206 were violations of State or Local Laws for speeding 11-14 miles per hour over the speed limit;

    (e)    At least 79 were violations State or Local Laws for speeding 15 or more miles per hour over the speed limit;

    (f)    At least 72 were violations of State or Local Laws for speeding in a work or construction zone;

    (g)    At least 72 violations resulted from hand-held mobile telephone use while operating a commercial motor vehicle;

    (h)    And US Xpress or its drivers received dozens of violations for failing maintain lane position, inattentive driving, failing to yield the right-of-way, and reckless driving.

3.10.    US Xpress vehicles have been involved in at least 768 crashes. Of those, at least 223 resulted in human injuries and 22 resulted in at least one death.

3.11.    US Xpress received at least 3,290 vehicle maintenance violations.

3.12.    US Xpress received at least 592 hours-of-service compliance violations. These include 114 violations for falsely reporting a drivers record of duty status; 40 violations of driving beyond a 14-hour duty period; 24 violations of driving beyond an 11-hour driving limit in a 14 hour period; and

multiple violations for failure to adequately train drivers, and violations for US Xpress drivers operating vehicles while fatigued

3.13. US Xpress received at least 30 drug and alcohol violations, including multiple violations for its drivers on duty and in possession of a narcotic drug or amphetamine; its drivers possessing alcohol while on duty or operating or in control of a commercial motor vehicle; its drivers on duty and under the influence of, or using a narcotic drug or amphetamine; and its drivers being on duty, operating or in physical control of a commercial motor vehicle while under the influence of intoxicating beverages, including alcohol.

3.14. US Xpress has received at least 68 driver fitness violations, including operating a commercial vehicle without an appropriate license, and operating a commercial vehicle with a suspended license.

3.15. Before hiring Mr. Reid, federal law requires US Xpress to obtain a copy of Mr. Reid's driving record from the appropriate state agency.

3.16. Had Defendant US Xpress conducted due diligence in the hiring of Mr. Reid, it would have discovered multiple traffic infractions, including speeding, and a felony charge of aggravated assault with a deadly weapon.

3.17. US Xpress employed Mr. Reid to drive a tractor hauling a trailer (sometimes referred to as a "Freightliner or 18-wheeler"). On September 27, 2017, Mr. Reid drove a US Xpress tractor trailer on northbound Interstate Highway 35 through Waco, Texas. The tractor trailer weighed more than 10 tons.

3.18. Around 11:43am, the US Xpress tractor trailer followed a blue Suzuki in the middle lane of the northbound I-35, approximately near the 1200 block of S. 11th St. The Suzuki attempted a lane change to the right

lane, but could not fully complete the lane change. So, the Suzuki returned to the middle lane. Because the US Xpress was following too closely, it did not have enough space to brake without colliding into the Suzuki. Instead, the US Xpress tractor trailer unsafely and without keeping a proper lookout, swerved into the left lane.

3.19. In the left lane, the US Xpress trailer hit Mr. Frazier's silver 2006 Dodge with so much force that it forced the Dodge over the concrete barrier and across all three southbound I-35 lanes. Mr. Frazier's vehicle was totaled. The US Xpress tractor trailer suffered no disabling damage.

3.20. Upon information and belief, the US Xpress tractor trailer had recording equipment—which recorded the wreck that is the basis of this lawsuit—and US Xpress possesses the video of this wreck.

3.21. Upon information and belief, the US Xpress tractor trailer had recording equipment that logs the travel activity of the tractor trailer, including stops. US Xpress possesses the logs from September 2017.

## LIABILITY

4.1. US Xpress' employee, Defendant Lloyd Kernel Reid, owed a duty to those lawfully on the roadway, including Mr. Frazier, to operate his vehicle in a reasonable and safe manner. This duty included a duty to follow other vehicles at a safe distance with enough space to brake.

4.2. As a licensed motor carrier, Defendant US Xpress owed a regulatory and common law duty to investigate and qualify drivers before putting them on the road to drive trucks.

4.3. US Xpress employee, Kernel Lloyd Reid, operated the US Xpress tractor trailer in a manner that was negligent. Mr. Reid was negligent in one or more of the following ways, by:

- (a) Failing to properly maintain his tractor trailer;

- (b) Failing to do proper and thorough pre- and post-trip checks on his tractor trailer;

- (c) Following the Suzuki vehicle too closely and without enough space to stop safely;

- (d) Driving his vehicle while his ability or alertness was impaired through fatigue or by driving in violation of the hours-of-service regulations;

- (e) Failing to maintain a proper lookout before making a lane change;

- (f) Failing to decrease the speed of his vehicle to avoid colliding with any person, vehicle or other conveyance on the highway, and particularly the vehicle driven by Plaintiff;

- (g) Taking no action or inadequate actions to bring the tractor trailer under control to avoid a collision, even though he had ample opportunity to do so and although he saw or in the exercise of reasonable diligence should have seen that it was necessary for him to take action to avoid a collision; and

- (h) Failing to keep a look out before making a lane change, and made an unsafe lane change;

4.4. The acts or omissions of Defendant Kernel Lloyd Reid are imputed on to Defendant US Xpress under the doctrine of respondeat superior and vicarious liability.

4.5. Defendant US Xpress was negligent in one of more of the following ways:

    (a) US Xpress was negligent in the qualification, hiring, training, supervision, and retention of Kernel Lloyd Reid;

    (b) Due to Defendant US Xpress' historic pattern of fitness violations and violations of the Federal Motor Carrier Safety Regulations and state traffic laws, upon information and belief, Defendant had an inadequate driver qualification, training, and monitoring process;

    (c) Due to Defendant US Xpress' historic pattern of vehicle maintenance violations of the Federal Motor Carrier Safety Regulations, upon information and belief Defendant inadequately inspected and maintained its vehicles, including pre- and post-trip inspections;

    (d) Due to the circumstances in the collision, combined with Defendant US Xpress' history of hours-of-service violation and policies which facilitate fatigued driving and incentivize violations of the hours-of-service limitations, upon information and belief, Kernel Lloyd Reid was fatigued and operating in violation of the hours of service regulation set out in the Federal Motor Carrier Safety Regulations.

4.6. As a direct and proximate cause of one or more of the negligent acts of the above Defendants, Plaintiff Felix Frazier suffered personal injuries and property damage, including:

(a) Medical expenses, past and future;

(b) Property damages, including the loss of use of Plaintiff's vehicle;

(c) Lost wages and earning capacity, past and future;

(d) Physical impairment, past and future;

(e) Physical pain, emotional distress, and mental anguish, past and future; and

(f) Disfigurement, past and future.

4.7. Plaintiff is entitled to costs, pre- and post-judgment interest, and all other damages the Jury and the Court finds Plaintiff deserving.

## JURY DEMAND

Plaintiff requests that Defendants be cited in terms of law to appear and answer this Complaint; Plaintiff requests that his cause be tried to a jury of his peers; that upon final trial, the Plaintiff have judgment against Defendants, for the amount of actual damages and for other and different amounts as Plaintiff shall show by proper amendment before trial; for pre- and post-judgment interest at the applicable legal rate; for all Court costs incurred in this litigation; and for such other relief, at law and in equity, both general and special, to which Plaintiff may show himself entitled to and to which the Court believes him deserving.

Respectfully Submitted,

/s/  Jamal K. Alsaffar
**JAMAL K. ALSAFFAR**,
jalsaffar@nationaltriallaw.com
Texas State Bar #2402719
**TOM JACOB**,
tjacob@nationaltriallaw.com
Texas State Bar #24069981
**WHITEHURST, HARKNESS, BREES, CHENG, ALSAFFAR, HIGGINBOTHAM, & JACOB P.L.L.C.**
7500 Rialto Blvd, Bldg. Two, Ste 250
Austin, TX 78735
(512) 476-4346 (o)
(512) 467-4400 (f)


**MEGAN E. LOVELADY**,
meg@loveladylawoffice.com
Texas State Bar #24093477
**LOVELADY LAW OFFICE**
11201 Native Texan Trail
Austin, TX  78735
(512) 904-0244 (o)
(512) 233-0747 (f)

Attorneys for the Plaintiff