IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **FELIX FRAZIER**, <br><br> Plaintiffs <br><br> vs. <br><br> **U.S. XPRESS, INC., U.S. XPRESS ENTERPRISES, INC.,** and **KERNEL LLOYD REID**, <br><br> Defendants | NO. 6:19-CV-00557-ADA-JCM |

# PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Plaintiff files this Motion to Compel Discovery and respectfully asks the Court overrule Defendants' blanket and general objections to discovery and compel Defendants in this motor vehicle truck wreck case to produce:

- DriverTech electronic monitoring data of the Defendant's truck involved in the wreck; and

- Policies, procedures, training, and other safety materials relevant to his negligent hiring, training, and supervision claim.

# BACKGROUND

Plaintiff sued Defendants for negligence and negligent hiring, training, and supervision related to an auto-accident involving Plaintiff and Defendant Kernel Lloyd Reid. At the time of the accident, and for over a decade prior,

Defendant Reid was working for Defendants U.S. Xpress, Inc. and U.S. Xpress Enterprises, Inc.

**Certificate of Conference:** Plaintiff served Defendants with his First Set of Requests for Production on April 3, 2020. Defendants responded to Plaintiff's requests by asserting a myriad of blanket objections and refusing to produce documents at the core of this lawsuit. In an attempt to avoid filing this Motion, undersigned counsel conferred with Defendants' counsel to remove improper objections and produce data generated and stored on DriverTech software or its equivalent and Defendants' policies, procedures, and other training/safety materials available to Mr. Reid. Plaintiff sent Defendants' counsel a letter on May 14, 2020. Plaintiff followed up by email on May 19, 2020. Counsel also conferred in a remote-Zoom meeting on June 2, 2020.

## ARGUMENT

Motions to compel are controlled by Fed. R. Civ. P. 37(a). Rule 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production against another party when the latter has failed to produce documents as requested in accordance with Rule 34. *See* Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv). Plaintiff seeks an order overruling Defendants' objections to certain discovery and compelling Defendants to fully respond to the discovery. Plaintiff also seeks an order compelling Defendants to produce a privilege log for any documents withheld from production by reason of a claimed privilege or objection.

1. *DriverTech data, in native form, is discoverable.*

In a series of discovery requests, Plaintiff seeks electronic data from Defendants in native form.[1] Counsel for the Parties conferred on this matter and undersigned counsel learned that the truck involved in the crash was equipped with DriverTech. DriverTech is an industry leading fleet management and in-cab technology service that generates and stores vehicular, compliance, safety, and productivity data. To illustrate the breadth of DriverTech's data services, an excerpt from the company's website is included below.[2]



Courts routinely require the retrieval of "black box" data in car wreck cases. *E.g.*, *Padilla v. Price Toyota*, No. 04-cv-3422, 2005 WL 6209494, at *3–

---

[1] *See* Plaintiff's Requests for Production to Defendant Reid Nos. 14-16, 40, 47; Plaintiff's Requests for Production to Defendant U.S. Xpress, Inc. Nos. 9, 12-14, 33-34, 54, 61; and Plaintiff's Requests for Production to Defendant U.S. Xpress Enterprises, Inc. Nos. 9, 12-14, 33-34, 54, 61.

[2] Images pulled from URL: https://www.drivertech.com/features/

4 (D.N.J. Oct. 28, 2005) (car-wreck case in which court overruled motor carrier's objections and compelled production of onboard data because although such devices may only *potentially* contain "crash pulse, vehicle speed, brake application, throttle position and seat belt status," such data would "provide important information to any party seeking to better understand the crash events"); *CSX Transp. Inc. v. Trakspec Ry. Corp.*, No. 3:14-cv-27813, 2016 WL 51263, at *2–3 (S.D.W. Va. Jan. 4, 2016) (train-wreck case in which court overruled all objections and compelled production of event recorder data because such request was "neither unreasonable, nor disproportionate to the needs of [a train-wreck] case"); *Macaione v. Mercedes-Benz USA, Inc.*, 2009 WL 10694597, at *2–3 (D.R.I. Sept. 4, 2009) (auto-accident case in which court compelled production of *all* data stored on onboard device, not mere "printouts" or "diagnostic summaries" that defendant argued were sufficient; court also noted that defendant's claim—"they did not have a black box"—was unconvincing at best).

In *Preston v. Schneider Nat'l Carriers, Inc.*, for example, a motor carrier's objections to producing onboard recording data were categorically rejected. *Preston v. Schneider Nat'l Carriers, Inc.*, No. 2:04-CV-19, 2005 WL 8161504, at *1 (E.D. Tex. Jan. 27, 2005) (reminding defendant motor carrier that "scope of discoverable information is broader than the scope of admissible information"). The *Preston* case from the Eastern District of Texas is nearly identical to the present dispute. Like the *Preston* case, Plaintiff here plead "allegations of fatigue, negligent hiring, training and supervision, and…negligence." *Id.* Like *Preston*, Defendants here lodged a series of relevance and overbroad objections to Plaintiff's requests for onboard

recording data. *Id.* In overruling every relevancy and scope objection, the *Preston* court ordered production of the following:

- Original raw data and copies of any and all printouts of any on-board recording device, an on-board computer, tachograph, trip monitor, trip recorder, trip master, or other device known by any other name which records information concerning the operation of the truck;

- Any and all vehicle movement recording documents or records including any data generated by the use of any satellite device, cellular device, or automatic onboard recording device issued to record vehicle movements, messages, vehicle locations, dispatch information and/or hours of service information;

- Satellite records sufficient to demonstrate the locations for the subject vehicle and the subject driver; and,

- A complete copy of all satellite communications between motor carrier and driver together with all associated vehicle positioning data and date and time information.

*Preston*, 2005 WL 8161504, at *2; *see also Maldonado v. Union Pac. Ry. Co.*, No. 09–1187–EFM, 2010 WL 1980318, at *3 (D. Kan. May 18, 2010) (case involving a train wreck, the court required the production of event recorder data for the period of time when the train crew started their shift to the point when the train stopped moving following the collision). Like *Preston*, Plaintiff here requested nearly identical data from Defendants. *See* Exhibits 1-3 cited supra.

But in written discovery, Defendants have categorically claimed that the truck's electronic data is overbroad and irrelevant *to a truck wreck case*.[3] To

---

[3] To be clear, Defendants do not object to the difficulty or cost of accessing the electronically stored information. *See* Fed. R. Civ. P. 26(b)(2)(B).

illustrate, according to Defendants, the speed and locational data of the truck at or around the time of the crash is "overly broad" and "seeks discovery of matters not relevant to any issue in this case." *See* Exhibit 2 at No. 54; Exhibit 3 at No. 54. The very nature of the dispute is a car crash involving Defendants' truck, contractor, employee, and cargo. The speed, weight, location, the number of stops, and other ascertainable data stored on such devices are relevant to this lawsuit and clearly discoverable. *Preston*, 2005 WL 8161504, at *1. Without such data, Plaintiff is unable to prepare expert testimony and move this forward in any meaningful respect, which perhaps explains Defendants' latest position on this data issue.

As of June 2, 2020, Defendants' counsel represented that "to the best of their knowledge," no Defendant possesses electronic data or devices from the truck in question and likewise "has no idea" what happened to it. Setting aside possible spoliation concerns, Plaintiffs are entitled to know whether Defendants possess responsive discovery and whether Defendants are withholding the same. As it stands, Defendants' responses to Plaintiff's discovery requests make it impossible for Plaintiff to know what they have and what is being withheld. To the extent Defendants possess responsive data and are withholding it, their bases for withholding are improper and Plaintiff asks the Court to compel Defendants to strike Defendants' objections and produce responsive DriverTech data in native form or its equivalent.

2. ***Defendants' policies and procedures are discoverable.***

In a series of discovery requests, Plaintiff seeks discovery regarding Defendants' policies, procedures, training, and other safety materials

relevant to Mr. Frazier's negligent hiring, training, and supervision claim.[4] And yet, Defendants categorically claim that training materials are irrelevant to a negligent training action. Again, this position lacks any merit.

A company's policies and procedures on training and supervision are of course relevant and discoverable in a negligent training and supervision action. *See, e.g.*, *Felicia v. Celebrity Cruises, Inc.*, 286 F.R.D. 667, 673 (S.D. Fla. 2012) (citing Fed. R. Civ. P. 37(a)). In such a case, the same holds true for "investigative policies and procedures," "documents, guidelines, policies and procedures, or protocols whether in written form or on database available to" personnel involved or related to the accident, "policies and procedures concerning the capture and storage" of relevant data, and other "safety and environment manuals." *Id.* Defendants' objections to producing policies and procedures are improper and should be stricken.

Relatedly, the *Felicia* court not only ordered production of policies and procedures; it also compelled production of onboard data. *Id.* The court compelled the defendant cruise line to produce data and documents regarding imaging, positioning, timestamps, and other electronically stored information. *Id.* Indeed, the court compelled the defendant cruise line to produce onboard data and policies/procedures despite an identical series of objections that Defendants raised in this case. *Compare id.* at 671 (noting Defendant took "something of a scattergun approach to its responses…[by objecting to] relevance, and vagueness or overbreadth based on the lack of

---

[4] *See* Plaintiff's Requests for Production to Defendant Reid Nos. 29-32, 53, 61-62; Plaintiff's Requests for Production to Defendant U.S. Xpress, Inc. Nos. 37-42, 69, 74-75, 83, 88, 90; and Plaintiff's Requests for Production to Defendant U.S. Xpress Enterprises, Inc. Nos. 37-42, 69, 74-75, 83, 88, 90.

time frame") *with* Exhibits 1-3 identified supra. Defendants asserted these objections as a basis to withhold responsive discovery. Plaintiff asks the Court to overrule Defendants' objections and order the production of their policies, procedures, and other training and safety materials requested in Plaintiff's requests for production.

3. *Defendants' blanket objections should be overruled so Plaintiff can rely upon the responses.*

In addition to requests aimed at onboard data and policies and procedures, Defendants utilize blanket objections as grounds for failing to respond to almost every request for production. Blanket objections to discovery requests are inappropriate. *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014). Objections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections. *Id.* Boilerplate objections, even if lodged in response to individual discovery requests are also improper and ineffective. *Id.* And Federal Rule of Civil Procedure 34(b)(2)(C) requires that "an objection must state whether any responsive materials are being withheld on the basis of that objection."

3.1. **Defendants' general objections**

Defendants lodged the overly broad and/or vague and ambiguous objections throughout their responses without providing support for these allegations. A party resisting discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden of responding to the requests as asked. *See Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005); *see also S.E.C. v. Brady*, 238 F.R.D. 429,

437 (N.D. Tex. 2006) ("A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request."). Defendants lodged these blanket objections 223 times in response to 256 discovery requests.[5]

Defendants also objected to discovery and then answered "subject to" their boilerplate objections.[6] The practice of responding to discovery "subject to" and/or "without waiving" objections is "manifestly confusing (at best) and misleading (at worst), and has no basis at all in the Federal Rules of Civil Procedure." *Heller*, 303 F.R.D. at 487. "If a responding party makes such an objection but answers or responds 'subject to' and 'without waiving' the objection, such objection and answer preserves nothing and serves only to waste the time and resources of both the Parties and the Court." *Id.* (cleaned up). Defendants should be required to answer the discovery fully and completely without its "subject to" language so that Plaintiff knows what Defendants will produce and what they will not.

Also, Defendants claimed alleged privileges without providing a privilege log. If a responding party relies on a privilege to refuse to produce

---

[5] Defendant Reid lodged blanket objections in response to Requests for Production Nos. 3-32, 34, 36, 38-48, 53-57, 59, 61-66. *See* Exhibit 1. Defendant U.S. Xpress, Inc. lodged blanket objections in response to Requests for Production Nos. 1-32, 35-42, 44, 46-49, 51-63, 68-76, 78-90, 92-95. *See* Exhibit 2. Defendant U.S. Xpress Enterprises, Inc. lodged blanket objections in response to Requests for Production Nos. 1-32, 35-42, 44, 46-49, 51-63, 68-76, 78-90, 92-95

[6] *See* Exhibit 1—Defendant Reid's Responses to First Requests for Production at Nos. 3-23, 25-32, 34, 36, 38-41, 44-48, 53-57, 59, 61-66; Exhibit 2—Defendant U.S. Xpress, Inc.'s Responses to First Requests for Production at Nos. 2-28, 31-32, 35-38, 41-42, 44, 48-49, 51-52, 54-55, 58-59, 61, 70, 74-78, 80, 82-85, 89, 95; Exhibit 3—Defendant U.S. Xpress Enterprises, Inc.'s Responses to First Requests for Production at Nos. 1-22, 24-28, 31-32, 35-36, 38, 41-42, 44, 48-49, 51-52, 54-55, 58-59, 61, 69-70, 74-76, 78, 80, 82-85, 89, 95.

documents, that party must comply with Rule 26(b)(5)(A). *See Heller*, 303 F.R.D. at 486. That rule requires a withholding party provide a privilege log or its equivalent. *Id.*

Defendants also periodically stated they would not produce documents because the documents requested are allegedly equally accessible to both parties. As an illustrative example, Defendants claim that documents within the Defendants' possession at the time of the crash are equally accessible to Plaintiff. That position is nonsensical. Defendants should be required to fully respond to Plaintiff's requests and all equally accessible objections should be stricken.

### 3.2. **Defendants should not be permitted to use a relevance argument as a basis not to participate in discovery.**

Finally, Defendants lodged relevance objections to an overwhelming amount of Plaintiff's requests and used relevancy as a basis for noncompliance. Specifically, Defendants lodged relevancy objections and withheld production on that ground 222 times in response to 256 discovery requests.[7]

Defendants' blanket relevancy objections are improper and should be stricken. It is black-letter law that evidence need not be admissible to be discoverable. *Heller*, 303 F.R.D. at 489 (A party cannot refuse to comply with its discovery obligations because the party holds a "strong belief" that the

---

[7] *See* Exhibit 1—Defendant Reid's Responses to First Requests for Production at Nos. 3-32, 34, 36, 38-48, 53-57, 59, 61-66; Exhibit 2—Defendant U.S. Xpress, Inc.'s Responses to First Requests for Production at Nos. 2-32, 35-42, 44, 46-49, 51-63, 68-76, 78-90, 92-95; Exhibit 3—Defendant U.S. Xpress Enterprises, Inc.'s Responses to First Requests for Production at Nos. 1-32, 35-42, 44, 46-49, 51-63, 68-76, 78-90, 92-95.

information sought is not admissible in evidence). Defendants' 226 relevance objections should be stricken so Plaintiff can know what Defendants are actually withholding and so this case may move forward.

## CONCLUSION

Plaintiff requests that Defendants' objections to the discovery be overruled and Defendants be compelled to completely respond to the requests. Plaintiff further requests any other relief entitled to him by law, including relief pursuant to Fed. R. Civ. P. 37(a)(5)(A).

Respectfully Submitted,

/s/ Jamal K. Alsaffar
**JAMAL K. ALSAFFAR**
   jalsaffar@nationaltriallaw.com
   Texas State Bar #2402719
**TOM JACOB**
   tjacob@nationaltriallaw.com
   Texas State Bar #24069981
**WHITEHURST, HARKNESS,**
   **BREES, CHENG, ALSAFFAR,**
   **HIGGINBOTHAM, & JACOB P.L.L.C.**
7500 Rialto Blvd, Bldg. Two, Ste 250
Austin, TX 78735
(512) 476-4346 (o)
(512) 467-4400 (f)

**MEGAN E. LOVELADY**, *pro hac vice*
   meg@loveladylawoffice.com
   Texas State Bar #24093477
**LOVELADY LAW OFFICE**
11201 Native Texan Trail
Austin, TX 78735
(512) 904-0244 (o)
(512) 233-0747 (f)

Attorneys for the Plaintiff

## CERTIFICATE OF SERVICE

By my signature above, I certify that a copy of this pleading has been sent to the following on June 19, 2020 via the Court's CM/ECF notice system.

>Paul Clark Aspy
>Naman Howell Smith & Lee
>8310 Capital of Texas Highway
>Suite 490
>Austin, TX 78731
>(512) 479-0300
>512/474-1901 (fax)
>aspy@namanhowell.com